IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| TRAMAINE CHRISTOPHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:15-cv-399-GAF |
| | ) | |
| JACK COOPER TRANSPORT | ) | |
| COMPANY, INC., & LUC STOWERS, | ) | |
| | ) | |
| Defendants. | ) | |

# First Amended Complaint

Plaintiff Tramaine Christopher, by and through counsel, for her complaint against Defendants, Jack Cooper Transport Company, Inc., and Luc Stowers, states and alleges as follows:

## Parties

1.     Ms. Christopher is an individual residing at 2031 Belleview Ave, Kansas City, Jackson County, Missouri, 64108.

2.     Defendant Jack Cooper Transport Company, Inc., ("JCT") is a Delaware Corporation authorized to do business in the State of Missouri with its principal place of business located at 1100 Walnut St., Suite 2400, Kansas City, Jackson County, Missouri, 64106.

3.     On information and belief, Luc Stowers is an individual residing at 7801 N. Stoddard Ave., Kansas City, Jackson County, Missouri, 64152.

4. On information and belief, at all material times, Defendant JCT employed more than 500 persons.

5. On information and belief, at all material times, Defendant JCT grossed more than $500,000 per year in revenue.

## Jurisdiction and Venue

6. As this action is predicated in part on 42 U.S.C. § 200e, *et seq.*, and 29 U.S.C. § 201, *et seq.*, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331.

7. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 as the defendants are located in this District and a substantial part of the events or omissions giving rise to this claim occurred within this District.

## General Allegations

8. Ms. Christopher was employed as a full-time car hauler for JCT at Ford's Claycomo plant in January 2014 until her wrongful termination by JCT in August 2014.

9. Prior to her employment with JCT, Ms. Christopher had been employed as a full-time car hauler for Allied at Ford's Claycomo plant doing the same work.

10.     On information and belief, JCT bought Allied's operation at the Ford Claycomo plant, and replaced Allied's non-union management with new non-union management in January 2014.

11.     Ms. Christopher was a dues-paying member of the Teamsters Local 41 during all times material to these matters.

12.     Before her full-time employment, Ms. Christopher had been a casual employee of Allied engaged in the same type and kind of work.

13.     Ms. Christopher and her peers' regular payday has always been Thursday.

14.     In or about February 2014, Ms. Christopher's supervisor, Luc Stowers, refused to distribute employees' checks on the regular payday.

15.     Ms. Christopher initiated a grievance with Mr. Stowers' supervisor, Justin Leonard, who admonished Mr. Stowers to issue paychecks on the regular payday.

16.     Mr. Stowers then withheld paychecks until the end of the day, carrying the stack of paychecks (in envelopes) around with him all day on payday.

17.     Ms. Christopher initiated a second grievance with Mr. Stowers' supervisor, Justin Leonard, who directed that Mr. Stowers should cease personally controlling the distribution of paychecks, which should be available on payday at the terminal office instead.

18.     Immediately after the first grievance, and continuing after the second grievance, Mr. Stowers, individually, and/or as an agent, and/or employee, and/or

representative of JCT, began a continuous pattern of hostility in the workplace toward Ms. Christopher.

19.     In or about April 2014, Mr. Stowers and JCT implemented a new restroom-use policy whereby:

     a.     Yard employees were required to report to Mr. Stowers over the radio (for all employees to hear) when they were going to use the restroom;

     b.     Requiring Mr. Stowers's permission over the radio to use the restroom;

     c.     Mr. Stowers would go to the yard trailer to time the employee while she used the restroom.

20.     Concurrently with the new restroom-use policy, Mr. Stowers and JCT also installed a closed-circuit surveillance system in the yard trailer, which caused Ms. Christopher to use the restroom only in the dark out of fear she was being surveilled in the restroom.

21.     On or around June 29, 2014, Ms. Christopher was involved in a minor accident while moving a vehicle at work, when a transport driver, who was not wearing his required safety equipment, darted unexpectedly in front of her vehicle (despite Ms. Christopher having repeatedly honked her horn to warn of her approach).

22.     A passenger in Ms. Christopher's vehicle witnessed the accident and backs up Ms. Christopher's version of events.

23.     In the weeks after the accident, Mr. Stowers orchestrated an inherently flawed "investigation" of the accident.

24.     Following this accident, Mr. Stowers fired Ms. Christopher.

25.     Defendants treated Ms. Christopher's accident in a different manner than it had handled males' and non-African-Americans' similar accidents.

26.     On or about the day after firing Ms. Christopher, Mr. Stowers hired his own white, male step-child to replace her.

27.     Ms. Christopher filed a complaint with the EEOC and received her right-to-sue letter on May 18, 2015.

28.     Ms. Christopher's original Verified Complaint was filed within 90 days of the issuance of the EEOC right-to-sue letter and within 300 days of actions giving rise to the substance of her Verified Complaint.

## Count I:
## Wrongful Discharge

29.     All other averments are incorporated by reference as though fully set forth herein.

30.     Ms. Christopher was in an employer-employee relationship with JCT.

31.     JCT is subject to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201, *et seq.*

32.     Mr. Stowers and JCT, in response to Ms. Christopher's grievances, retaliated against her, including firing her in August 2014.

33.     Even before firing her, Mr. Stowers had subjected Ms. Christopher to a continuous pattern of hostility and retribution in the workplace.

34.     Included in Mr. Stowers's pattern of hostility and retribution was his active participation in, and orchestration of, an investigation into the June 2014 workplace accident.

35.     Mr. Stowers and JCT violated FLSA in at least these ways:

    a.     Showing favoritism toward other employees in time management, work conditions, and criticism;

    b.     Singling out Ms. Christopher;

    c.     Disregarding Ms. Christopher's seniority;

    d.     Purposefully ignoring Ms. Christopher;

    e.     Mr. Stowers's parking his truck across multiple parking spots that Ms. Christopher regularly used when she arrived early for work, then later moving his vehicle after the shift began;

    f.     Refusing to allow Ms. Christopher to take emergency phone calls related to her minor child's health, safety, and education;

    g.     Insisting Ms. Christopher endanger herself to arrive at work, when her car had broken down in the middle of highway during her commute;

    h.     Terminating Ms. Christopher's employment following an accident that resulted not from her fault, but, rather, from the fault of the

transport driver involved and from poor vehicle-flow management in JCT's "city" yard.

36.     On information and belief, since her termination, JCT changed the vehicle flow in the "city" yard so that, given the same circumstances as Ms. Christopher found herself on June 29, 2014, another driver would not be driving a vehicle in close proximity to transport drivers.

37.     On information and belief, since her termination, JCT changed its restroom-break policy to conform with federal law requiring that restrooms be made available to employees.

38.     Ms. Christopher was damaged by the behavior and actions of Mr. Stowers and JCT.

WHEREFORE, Ms. Christopher requests judgment be entered in her favor and that the Court award her an amount of damages that would make her whole and would compensate her for the losses proximately caused by Defendants, including the full extent of damages allowable under the Fair Labor Standards Act, including her costs and attorneys' fees in bringing this action, and for any other such relief the Court deems just and proper.

## Count II:
## Wrongful Withholding of Wages

39.     All other averments are incorporated by reference as though fully set forth herein.

40.     JCT's regular payday was Thursday.

41. On at least two occasions in or about February 2014, Mr. Stowers and JCT withheld prompt payment of Ms. Christopher's pay (and other employees' pay, too).

42. Mr. Stowers and JCT's withholding of paychecks caused Ms. Christopher to incur an unreasonable delay in being able to deposit them at her bank.

43. Mr. Stowers and JCT did not have a valid reason to withhold Ms. Christopher's (and others') paychecks.

44. Mr. Stowers's and JCT's withholding paychecks violated FLSA, 29 U.S.C. 201, *et seq.*, and caselaw interpreting it, which require employees to be paid on their regular payday, and which treat a late payment as if no payment was made at all.

WHEREFORE, Ms. Christopher requests judgment be entered in her favor and that the Court award her an amount of damages that would make her whole and would compensate her for the losses proximately caused by Defendants, including the full extent of damages allowable under the Fair Labor Standards Act, including her costs and attorneys' fees in bringing this action, and for any other such relief the Court deems just and proper.

## Count III:
## Discrimination on the Basis of Sex and Pregnancy

45. All other averments are incorporated by reference as though fully set forth herein.

46. Ms. Christopher is a member of a protected class, as identified in 42 U.S.C. § 200e, *et seq.*, as determined by her race.

47. Ms. Christopher met all of the legitimate expectations of her employer.

48. Mr. Stowers and JCT implemented restroom-use policy described hereinabove.

49. The policy implemented by Jack Cooper impacted Ms. Christopher more than other employees because of her gender to wit:

a. According to reputable medical studies, women require more frequent restroom use than men to express their bladder, which means the restrictive restroom-use policy more greatly impacted women than men;

b. Women of child-bearing age, as Ms. Christopher was and is, require more frequent restroom use (than men do) for hygiene purposes; which means the restrictive restroom-use policy more greatly impacted women than men; and

c. Women who are pregnant may require more frequent restroom use to monitor themselves for symptoms of trouble; for approximately 8 weeks in the spring of 2014, Ms. Christopher required more frequent restroom use for those purposes, which means the restrictive restroom-use policy more greatly impacted women than men.

50. There is no valid reason for Mr. Stowers and JCT to have implemented such a policy.

51.     Although the restroom-use policy made no direct mention of sex or pregnancy, the impact of the policy was greater upon women than upon men.

WHEREFORE, Ms. Christopher requests judgment be entered in her favor and that the Court award her an amount of damages that would make her whole and would compensate her for the losses proximately caused by Defendants, including the full extent of damages allowable under Title VII, including her costs and attorneys' fees in bringing this action, and for any other such relief the Court deems just and proper.

## Count IV:
## Discrimination on the Basis of Sex

52.     All other averments are incorporated by reference as though fully set forth herein.

53.     Ms. Christopher is a member of a protected class, as identified in 42 U.S.C. § 200e, *et seq.*, as determined by her gender.

54.     Mr. Stowers and JCT engaged in a pattern of activity that provide the inference of discrimination on the basis of sex, including, but not limited to:

a.     Treating female employees differently than male employees in regard to verbal communication and work assignments;

b.     Treating accidents, attendance, and conduct of female employees differently from they treated the accidents, attendance, and conduct of male employees;

c.     Filling Ms. Christopher's job with Mr. Stowers' white, male step child immediately after terminating Ms. Christopher;

d.     Showing favoritism in the use of casual workers referred by male employees over those casual workers referred by female employees;

e.     Other such information as will be uncovered during the course of discovery,

55.     Ms. Christopher was damaged by the behavior and actions of the Defendants.

WHEREFORE, Ms. Christopher requests judgment be entered in her favor and that the Court award her an amount of damages that would make her whole and would compensate her for the losses proximately caused by Defendants, including the full extent of damages allowable under Title VII, including her costs and attorneys' fees in bringing this action, and for any other such relief the Court deems just and proper.

## Count V:
## Discrimination on the Basis of Race

56.     All other averments are incorporated by reference as though fully set forth herein.

57.     Ms. Christopher is a member of a protected class, as identified in 42 U.S.C. § 200e, *et seq.*, as determined by her race.

58.     Mr. Stowers and JCT engaged in a pattern of activity that provide the inference of discrimination on the basis of race, including, but not limited to:

f. Treating African-American employees differently than non-African-American employees in regard to verbal communication and work assignments;

g. Treating accidents, attendance, and conduct of African-American employees differently from they treated the accidents, attendance, and conduct of non-African-American employees;

h. Filling Ms. Christopher's job with Mr. Stowers' white, male step child immediately after terminating Ms. Christopher;

i. Showing favoritism in the use of casual workers referred by non-African-American employees over those casual workers referred by African-American employees;

j. Other such information as will be uncovered during the course of discovery,

59. Ms. Christopher was damaged by the behavior and actions of the Defendants.

WHEREFORE, Ms. Christopher requests judgment be entered in her favor and that the Court award her an amount of damages that would make her whole and would compensate her for the losses proximately caused by Defendants, including lost benefits, lost future benefits, her costs and attorneys' fees in bringing this action, and for any other such relief the Court deems just and proper.

## Count VI:

## Invasion of Privacy – Public Disclosure of Private Facts

60.     All other averments are incorporated by reference as though fully set forth herein.

61.     Mr. Stowers required all employees to announce over the radio when they were going to be using the restroom.

62.     The radio was not on a closed channel and could be accessed by any member of the general public, and was actively monitored by other workers JCT employees as a condition of their employment.

63.     Ms. Christopher did not waive her right to keep this information private, and in fact was regularly embarrassed by having to reveal this information to her supervisor and her co-workers.

64.     Mr. Stowers would place a limit upon the length of time in which the employees could use the restroom.

65.     Restroom habits, including frequency, duration, and purpose, are private matters.

66.     The public–including Ms. Christopher's co-workers–have no legitimate concern in the habits, frequency, duration, or purpose of Ms. Christopher's restroom use.

67.     This disclosure of private facts brought humiliation and shame to Ms. Christopher, and would cause humiliation and shame to any other reasonable person with ordinary sensibilities.

68.    Ms. Christopher was damaged by the invasion of her privacy and by the public embarrassment she suffered at the hands of the Defendants.

WHEREFORE, Ms. Christopher requests judgment be entered in her favor and that the Court award her an amount of damages that would make her whole and would compensate her for the losses proximately caused by Defendants, including lost benefits, lost future benefits, her costs and attorneys fees in bringing this action, and for any other such relief the Court deems just and proper.

## Designation of Place of Trial

Ms. Christopher designates the Western Division as the place of trial.

## Jury Demand

Ms. Christopher requests trial by jury of all issues.

Respectfully submitted,

THE FLYNN LAW FIRM, P.C.

By:    /s/ Robert F. Flynn
Robert F. Flynn, #60453
1150 Grand Blvd., Ste. 300
Kansas City, MO  64106-2302
(816) 283-3400 / (816) 283-3405 Fax
Robert@TheFlynnLawFirm.com
*Attorney for Plaintiff*

Certificate of Service

I here certify that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record receiving electronic notification and that I served the foregoing by first-class mail, postage prepaid, upon any counsel of record not receiving electronic notification.

By:  s/ Robert F. Flynn